Good morning. May it please the court. My name is Mark Topel and I'm here representing Appellant Randy George. Our central contention on appeal, your honor, is that the facts of this case did not justify the use of the criminal law to prosecute for tax evasion because the clearly established in the law at the time of the prosecution. The standard that has been applied here because of the willfulness requirement was set out very clearly in a prior case of this circuit authored by Judge Fletcher in 1986, the Russell case, dealing with whether or not a form of a fraudulent tax shelter was sufficiently unique as to not be allowed to be prosecuted under the criminal law. And what you said then, your honor, is still very much the law that is applied today. If it is clear beyond any doubt there using that a scheme is illegal under established principles of tax law, then the participants have fair notice of its illegality, even if no appellate court has explicitly so ruled. In this case, it is not disputed that no appellate court has ruled on the particular issue that is facing you here. That is, when a receiver receives payments prior to them being either formally approved by the court which appointed the receiver, or all disputes which are or have been raised subjecting the possession of that money to contingencies. Let me just ask a question. Yes, sir. And maybe you can cast some light on this and address the concern I have. My understanding is that on the willful, the fraudulent filing, that the defense is, I was a receiver. I received payments from the court, but they were always subject to court approval. And I might get these in 1993, but the court might not approve of them until 1994. Therefore, it was entirely legitimate for me not to report that income in 1993, even though I may have technically received it. It was subject to court approval. In fact, the court might even ask me to discord some of it based on the final audit. Do I have that captured kind of accurately? Yes, you do. Okay. Well, what do we make of the fact that your client never filed? I'm sorry. I didn't hear. What do we make of the fact that Mr. George never filed? I mean, did he ever file a return in subsequent years saying, pointing back to the amounts? The issue, the answer is, is he has filed subsequent returns, but not pointing back to those amounts, because that matter at the time of the trial was still under litigation with the IRS. He was represented by both civil and criminal tax counsel who had advised him to keep the matter open until the criminal matter was finished and finally reviewed. Well, let me ask another question. It looks like from the record that in at least two years, the fees were received and the final receivership was closed in that year. In one case, that is correct. In one of the partnerships, and, Your Honor, I want to point out that in our opening brief, it should have been more clearly stated that in that one case, and that is the case in 1992 of the KXGO partnership, there was a final determination in December of 1992. However, the problem with that final determination and why we feel it's not dispositive of the question at all is that there were two claims that were currently still being made against those awards, one for attorney's fees and the other for some expense, which had not been resolved. And the evidence of that is that there is evidence of that in the record. And the instruction that we asked, and, again, I want to make this very clear, the instruction A, which is appended to our opening brief and is found in the record, asks that the jury be informed that where the final determination hadn't been made or claims were still extant against the payments that had been made, both of them are set forth that the income would not have to be reported. That covers all situations. In our opening brief, that was not made clear. I apologize for that. But you are absolutely correct that in the case of one partnership there are no, Your Honor, as far as well, I mean, my opponent I'm sure will correct me if I'm wrong, but I believe that the only determination that fits in the fact sequence that you've set out is KXGO partnership, which was in December of 1992 was the final determination. The issue here really is, I believe, a larger issue than the fact issue because there was acknowledgment below in the extensive argument and briefing that we had on this that not only was the law unclear, but that if, in fact, the claim of right doctrine, the North American, the old North American case, did not apply here and the contingent rules did apply, that there would be no basis to proceed on the prosecution of this, the two felony counts, and not separating the failure to file count. And we have cited in our record, in our brief, the citations where that was frankly acknowledged both by the prosecution and by the district court. And the importance of that is that now, of course, the government is saying that the matter was very clear and under the cases, it's very clear that this is a claim of right. We certainly dispute that. You have seen the cases that we have cited. The cases are all over the place on this, and they're very fact-sensitive. And I would want to suggest to the Court a way that I believe those are intellectually synthesized in an honest way. It seems as if the appellate courts, in reviewing this whole contingent versus claim of right issue, don't go on cash basis or accrual. I think that's a red herring. What they go on is, how real is the possibility that the payments that are made in whatever the year in determining this timing issue, how real is the possibility that there is going to be some court action or judicial review which is going to prevent the continuing receipt or force a disgorgement of some of these monies? And, in fact, in the record of this case, there is evidence that in the case of one of the partnerships, there was a claim which forced Mr. George to disgorge $30,000 of money he had previously received. So as far as we are aware, on the facts that are before this Court, there is a very real possibility of these monies not being allowed to be kept. And there was a rule of court, California rule of court at the time, which required and specifically stated, it was California rule of court 353, which has since been modified but at this time was enforced, which specifically stated, look, receiver, you're getting these interim or advanced monies very much subject to the requirement that you may have to give them back. What do we make of the loan applications and the made-up tax returns? Well, what do I make of it? I think it's extremely unfortunate and probably very regular that when you go, you push your income when you apply to a bank, and you minimize your income. But Mr. George did more than that. He did more than that. First of all, in these loan applications, he treated these receiver fees as if they were absolutely solid in his hand, subject to no disgorgement, audit, debit, whatever. That's one. And number two, he prepared false, phony income tax returns and used them as part of the loan application, didn't he? I do not excuse his conduct. What I do say to you, it is beside the point of the main issue you have to decide Well, the main issue is, was the conduct willful? Was the failure to report this income willful? Your contention is he had a good-faith belief, even though he got it. It was subject, audit, credit, debit, whatever. But here he is going into lenders, saying it's my money, it's my income, and here's my income tax returns. Judge Hawkins, we're going one step before we're getting to where you are. And the argument that we are making is, despite whatever his subjective belief may have been, the state of the law was not sufficiently settled objectively at this point to allow for criminal prosecution for willful evasion of the tax law. It certainly is pertinent to the good-faith belief aspects of this case. I'm not disputing that with you, that those facts and how they may fall and how they may be interpreted go to that. But there's a prior threshold question here that is, you don't even get to the good-faith issue. How can it be willful? In your mind, this is like shooting a dead body. Well, there was a case here this morning, and perhaps that's an apt analogy. I would like to. It doesn't matter what was in your client's mind, what his intent may have been, what his theory may have been, what methods that he used to transact his business. If, in fact, legally, he was not required to report this in those years, he can't be prosecuted or convicted for it. That's correct. He can be, and I suggest to this Court that this is much more properly where you should use administrative or civil collection actions. Because what is going on here, and I want to, I see my time is. I want to ask you one more thing to put into the facts. Some of the, at least two of the, in my view, of the receiverships were closed in the year that these were received. But I think also that there were some that were closed in the subsequent year and he then should have reported. The facts are not too favorable to you. Your Honor, I certainly take your understanding of these facts as accurate, with the exception that I don't agree that it was two. But once again, I may be rudely corrected in a few minutes here. But I'm making the point that maybe this is a case where hard cases may end up making bad law. There is an issue here which transcends the actual facts of this case, which is that at the time of this prosecution, it was not established that the type of payment that was received here was in fact a payment that was to be taken in the year of receipt. And if that is not established under what I understand, both the rules of lenity and the rules of this particular area, the Dahlstrom line of cases, which I addressed, is that that is a bar on the convictions in this case, regardless of whether or not you could properly conclude, if that was the case, and I would argue against that, but if you could properly conclude that the defendant wasn't acting with the best of intent. I want to say one more thing. I see my time is up. There is a misdemeanor failure to file case here that we believe is tainted by all of the evidence that came in on the felonies. But more importantly, even if you were to reverse on the felonies and uphold on the misdemeanor failure to file, we believe it must be remanded for sentencing issues, because the judge below used guideline and table calculations, which, as much as I can understand what the current state of the law is, Booker, et cetera, ought to be addressed again in the district court. I thank you very much, and I have a little time for rebuttal. How much do I have? About a minute and a half. All right. Thank you very much. We'll hear from the government at this time. Good morning. My name is David Denyer. I'm an assistant United States attorney here in San Francisco. First, I'd like to address counsel's interpretation of the Russell case, which I read somewhat differently. In Russell, the defendants argued that they lacked fair notice of the illegality of a tax scheme until a similar scheme in the Eighth Circuit had been decided and then the law was clear. This Court, in fact, rejected that Dahlstrom argument, citing the longstanding principle of Lucas v. Earl that income is taxed to the person or entity which, in fact, controls the earning of the income. That was the holding in Russell. It supports the government's position in this case where we have a longstanding principle under the claim of right doctrine that when a taxpayer, cash-based taxpayer, receives income in a year, it is not subject to a fixed or existing obligation to repay, then he must report the income in that year. And that is the case here. It is not a question, as counsel suggests, of some sort of analysis of the likelihood that he may be subject to disgorge his fees because a disgruntled party in the proceedings bring a challenge his motion for approval of his fees at some later date. It is in the case that is very clear, the Supreme Court case in Indianapolis Power and Light, that the standard is whether or not there is a fixed and existing obligation to repay. I'll stop Judge Fletcher's question. Is it one or two? I'm sorry? Is it one or two instances in which Mr. George received fees in a year and in that same year the Court did its audit and approval? I guess it's five. There's two in 1992 and three in 1994. In 1992, there was also the Reno broadcasting fees of about $36,000, and the testimony at trial was that that receivership was closed in 1992, and he did not report that $36,000 on the 1992 return that he filed with the Court. In 1994, and this was clear and unequivocal, and it was Mr. George testifying on the stand, that in each case of the Reno royal broadcasting, Diamond Broadcasting and JJN receiverships, that those receiverships, the Court approved the final accounting, closed the receivership in 1994, and the government established that none of those receivership fees were reported. I believe it was $133,000 for one, $126,000 for another, and another $66,000. So there were actually five instances where Mr. George did not act in accordance with what he called his good-faith belief. I don't think the question of good-faith belief has much merit here. That's been decided by the jury upon the facts. But what does trouble me is your claim that this is under a claim-of-right doctrine. And as the Court has said, if a taxpayer receives earnings under a claim-of-right and without restriction, now, that was not the way the Court instructed. The Court entirely rejected the defense-proposed argument, which was really a kind of a contingent allocation rule, and simply said that the defendant was liable if he actually received the money in his possession. He doesn't say anything at all about the restriction. And so I think, to me, you have a problem, first of all, as a matter of law, in how these instructions under 451 and the regulations can be applied and understood, because they seem to be ambiguous on their face. And secondly, I think you have a serious problem about the instruction. The Court simply instructs the way the government wants without considering anything the defendant requested. Well, Your Honor, I would beg to differ in this sense. The facts in this case did not establish that there were any restrictions on how Mr. George could use the fees. The fees and the evidence came in. There was check after check, many of which were actually written by Mr. George on a receivership account. Checks were deposited in his personal account, and he had unrestricted access to use them as he pleased. There was no evidence to indicate that at any time, while he was a receiver and receiving fees, there was any restriction whatsoever. Now, it was possible, a possibility, that at some subsequent date, you know, someone could come in and challenge his fees and say, well, geez, he was overpaid, he should have to discourse some of the fees. But at the time he received the fees, there was no restriction whatsoever. So I think it would have been improper for the Court to instruct that there was no restriction. Kennedy, but didn't the receiver payments have to be approved by the Court on return? At some subsequent date. But, and the evidence is in the record, that he received those fees on a monthly basis. They were approved by the Court initially, and he received them. He had full access to use them as he pleased. There was no restriction whatsoever on his use of the fees, subject to subsequently somebody possibly challenging them. And I would disagree. The record shows there was a challenge, but the record does not show that at any point Mr. George had to discourage any fees. So I would disagree with Your Honor on that. I think the instruction given was correct. Mr. George is a cash basis taxpayer, and he was required to report the income or the fees when they were received, in the year they were received, and that was what the instruction stated. I think it correctly stated the law. And so when the Court instructed under the claim of right doctrine, he does so without using the language, without restriction. He just clearly overlooks that. The Court did not instruct as to the claim of right doctrine. It just instructed that the jury asked to, cash basis taxpayer, when does he have to report his income? He has to report his income when he receives it or has control over it. And that's what the Court instructed. She did not elaborate or discuss the claim of right doctrine, and I don't think she had to. Well, it seems to me the instruction as used by the Court is that income must be reported in the year in which it's actually received. And isn't that the claim of right doctrine? Well, that would be how the claim of right doctrine applies. But the fact of the matter is, under Section 451 of the Code and the regulations, it doesn't say that. It says basically, if a person is a cash basis taxpayer, the general rule is he must pay or report his income in the year received unless he is under some different system of accounting. There are various systems of accounting that may be acceptable, where you may report it in a different manner. But in this case, that didn't apply, and it was simply a cash basis taxpayer receiving income on a monthly basis. Isn't that the basis of George's proposed jury instruction, which was rejected entirely by the Court? No, not at all. His instruction was that, in fact, the payment was contingent.  The contingency was removed, and there was no contingency there. The fact of the matter is, it's just as in the case of North American Oil, or in other cases that they have cited, Indianapolis Power and Light or the App Tower case, the question really is, you know, does he at the time have to have to have a fixed obligation for him to repay it? And these are the deposit cases. If there is, the Supreme Court has held that is not income because they're going to have to repay it at some point in time. If he – if there is no fixed or existing obligation to repay the income, the fact, as the Supreme Court has stated in North American Oil, the fact that he may have to repay it, or he may get a judgment against him at some point to discourse the fees, that does not mean that the income is not reportable in the year received. It merely means that if it happens, he may get a deduction in the subsequent year. I think the other issues are covered in your brief. Is there anything you'd like to tell us in winding up? Unless there are any questions you need response to? No. Well, I did have one question that I forgot I meant to ask the appellant. And I don't understand the misdemeanor account in the question of whether he willfully failed to file a return. And I got the implication that, well, that's all being worked out on a civil basis, and that he's negotiated with the IRS on how much is owed, and I guess it's a year, 93. Yet here, what kind of evidence was produced in defense of that claim before the jury in the criminal trial? Well, failure to file under 7203 requires, one, that the person was obligated to file a return. It has sufficient taxable income. The government established that, again, there were receiver's fees and other income more than sufficient to require him to file a return. The government has to prove that, two, he did not, in fact, file a return. It's unquestioned he didn't file the 1993 return. And then, three, the question is, did he willfully fail to file that return? And certainly the discussion earlier on the willfulness applied to 93 as it did to the ---- and I should clarify. They weren't tax evasion accounts. They were actually false return accounts for the first two counts. The willfulness was the same. Basically, we had unreported or no return filed for receivership fees that he was paid in 1993 and other income in 1993. So those were the three elements of the misdemeanor. I'm not sure I understand your misimpression that this was being handled civilly. Maybe I misunderstood counsel's statement. He said all that in 93 where he didn't file is being worked out on a civil level with the IRS. I beg to differ with him. We wouldn't be here on that count if it was being worked out on a civil level. He was being ---- once they uncovered the fact that he was not reporting his income for receivership fees in 1991-92, they obviously looked at the 1993 year where he didn't file at all and discovered the same unreported income, and the decision was to prosecute Alfred. He went from the guys with pens to the guys with guns. I think that might be correct. Okay. Thank you. Perhaps you can start by responding to Judge White's question. Yes, I am. It was being worked out in process with the IRS civil division at the time that the return was not filed. And the evidence concerning, in the trial record concerning, and the advice of counsel and all of that, the evidence concerning that is summarized at page 7 of our appellant's opening brief and can be found primarily at the trial transcript records that are cited there. Fundamentally, Judge, what was going on is that there was a series of discussions. An extension had been filed. The extension had run out. The civil revenue agents and the criminal CID, the case was in transition. There had been a 30-day extension given that had run past. There had been advice of an attorney as to the timing of filing of this. All of this was set out at trial and is set out in the record. And to the extent that you may have understood, I was implying that that's currently under some resolution. That's not the case. Well, evidently that was settled then with the IRS? No, it wasn't settled. It went on to be. Your argument was that that's what should have happened. Absolutely. My argument is that where there is this, well, that was certainly as to the felony counts and certainly as to the 93-year, which was closely connected with 91 and 92. That's correct, Your Honor. I hope that answers your question, Jim. All right. Thank you both for your arguments. A very interesting case with interesting issues. It's submitted for decision and the Court will stand in recess for the debate. Thank you. This court stands in recess until 12 o'clock. Thank you.
judges: Lay, B. Fletcher, Hawkins